Mr. Ramos, this case on document 2-15-0964, Ramos v. Topper, Plaintiff's Appellant, and Tassin's Transport Company, Defendant Holmes v. Peter Thomas, 5th and 10th Appellants. Arguing on behalf of the Defendant's Appellant is Bridget C. Diggins. Arguing on behalf of the Plaintiff's Appellant is Eugene Hermos. Mr. Ramos, could I have your attest that the correct caption for the caption is Jane Doe v. Allstate Indemnity Company? No problem. I'm sorry? Say that again? Jane Doe v. Allstate Indemnity Company. Well, the caption on the brief is Allstate Indemnity Company Plaintiff's Appellant v. Jane Doe, Defendant Appellant, is the way the brief is captioned. Okay, so we are talking about the same case, however. I'm sorry? Okay, and it's 2-17-0964. Correct. Correct? Correct. Okay, thank you for the clarification, counsel. And how do you pronounce your last name? Dignan. Dignan. Yes, thank you, Justice. Good morning. Good morning, Justices. Justice Gordon-Jorgensen, Justice Nenar, Justice Shostak, my name is Bridget Dignan. I represent Jane Doe on behalf of her minor children. The issue in the present case is whether a duty to defend or indemnify exists as to the insured spouse of a co-insured perpetrator who commits sexual abuse upon Myers. The trial court in its ruling for Allstate in its motion for summary judgment held that no such duty exists. The trial court examined the conduct of Adon Contreras, the sexual abuser only, and imputed his intent to his spouse, Alejandra Contreras, and to her home daycare, Jasmine's Daycare. We believe that ruling is erroneous. Whether an insurer has a duty to defend and indemnify depends upon whether the underlying complaint alleges facts within or potentially within coverage of the insurance policy. The Westfield v. Continental Court case applied that principle in determining whether a duty to defend or indemnify existed for an insured spouse of a co-insured perpetrator who committed sexual abuse upon Myers. Now, we did ask that counsel be prepared to address Westfield, but Illinois law is clear that Allstate would have owed no duty to defend or indemnify Adon had he been named as a defendant in the underlying action, because we must presume that he intended to injure Janie and Janet. That's the inferred intent rule. So, how does Westfield speak to the issue of whether Adon's presumed intent also precludes coverage for his co-insured? Well, the court in the Westfield case examined each individual insured's conduct on an individual basis and declined to impute the inferred intent of the perpetrator in that case to the spouse. And we believe that case to be synonymous in this case with regards to how that law should be applied, and our facts are different in that case. The court in that case declined to impute the intentional conduct of the sexual abuser to the spouse and instead focused upon the provisions of the policy and the allegations within the complaint in determining whether intentional acts inclusion applied to preclude Westfield from having to indemnify or to defend the spouse in that matter. In that case, when examining the individual allegations of the complaint against the defendant, the spouse, Westfield looked at the complaint and found that the factual allegations alleged that the spouse directed the minors to sit on the sexual abuser's lap while partially clad. She encouraged the minors to wear provocative clothing while interacting with the abuser. She did nothing when he left the marital bedroom to go into the children's bedroom and did nothing when one of the minors locked herself into the bathroom crying. Now, in examining that conduct, did the court look to the innocent insured doctrine? And if so, how did it apply here? Well, first the court looked at the factual allegations to see whether or not the spouse's conduct can have inferred intent. In other words, whether it can be reasonably expected or anticipated to cause harm to the minors. And in that case, the court, rightfully so, decided that it did based upon her actions of provocation and encouraging that she had reasonably expected and anticipated that her conduct would cause harm to the minors. And then with respect to looking at the innocent insured doctrine, that's kind of one and the same in looking at the policy in and of itself. I think the court decided that issue based upon her own conduct and whether or not it would be excluded under the exclusion. And there they found that she enabled the conduct of the perpetrator. That's absolutely correct. But what about here? I mean, is Jane's contention that Jasmine's daycare and Alejandra were innocent insurers? I mean, if so, how could they be? Because the allegations were that they were negligent. Well, the allegation of negligence in the tort context is different than how we interpret it in contractual. So with regards to whether or not an innocent insured is in fact innocent, it's whether or not that individual can reasonably expect or anticipate the injury to occur. Versus in the tort context where she wasn't acting as a reasonably careful person in performing her duties as a daycare provider. So when we look at it in this context, we're looking at it within the contractual context of whether or not she falls under the umbrella of an innocent insured. Basically, whether she reasonably expected or anticipated her own conduct would cause injury to the children. We don't have such factual allegations in our complaint. It is factually alleged that the minors were enrolled in the daycare from September of 2012 through December of 2012. During that time, it is our allegation that she failed to provide adequate supervision while the minors were in her care. That she allowed her spouse to be alone with the minors and failed to adequately protect the minors from the abuse, neglect, and exploitation that they experienced while at the daycare. Those are allegations that are under tort principle that we will have to prove at trial if given the opportunity. However, if we look at the actual pleading and the factual allegations within the pleading to decide whether or not there's coverage, we're looking at whether her conduct, whether it had the inferred intent or reasonably expected or anticipated to have caused injury to the minor. And in this case, there are no allegations contained within the pleadings that would support such a contention. And with regards to innocent insured, what the court looks to is what the policy provisions state. And in this case, all state posits that the term any, in quotes, insured contained within the intentional conduct exclusion means that the policy is void for all insureds. And when we're looking at the innocent insured contact, innocent insured and whether or not she was in, I apologize. If we're looking at whether or not she's an innocent insured and whether she falls within the policy, we're looking at whether or not the policy was voided with respect to Adon Contreras' intentional conduct for her as well. And when you say voided, I mean, they weren't seeking coverage for him, right? That's correct. Adon Contreras is not a defendant in the underlying matter. And there has been no coverage that has been requested by all state for his conduct. And so in this case, it's whether or not Alejandro Contreras and whether or not Jasmine's daycare is entitled to coverage under the innocent insured doctrine. It's our position that she is. Okay, but now Smiley, all state versus Smiley, talked about the phrase any insured person. And didn't that case, didn't the court in that case find that that term, which we have here, broadened the scope of the exclusion that was valid, that was in, that they were looking at there and that we have here? So if it's any or and, why wouldn't that broaden it so that the exclusion would cover the daycare and Alejandro? Well, because the issues presented to the court in all state versus Smiley did not include innocent insured. Instead, it included business activities exclusion. And in that case, they weren't examining the individual conduct of the spouses with regards to daycare. What they were doing was whether or not the act itself, whether or not the injury itself was caused in the context of a business activity. And the court found that it absolutely was. And therefore. And the husband's was as well. That's correct. It was all of the acts were done, whether they were done negligently, intentionally, or otherwise. They were all done in the context of a daycare that was excluded from coverage. And that was similar to the Northbrook case as well. Any injuries that were sustained by the plaintiff's case were inside a school bus that was excluded. So in other words, motor vehicles were excluded. That's correct. That's correct. In this case, we don't have an excluded daycare. We have a home daycare endorsement that was indeed covered and within the policy. So I think that this case can be distinguished in that regard. However, Your Honor, the Wasick court did, in fact, look at the term any insured when it came to the insured doctrine. And, excuse me, it was an all-state policy as well. So I think that is a good case that we can look to as to determine whether or not the any insured language voids coverage as to all insureds when discussing the improper behavior of an insured. So what does that case tell us with respect to that? That case tells us that Wasick was insured. He was insured, right? Yes. And in this case, it's a third party making the claim. That's correct. However, I think the interpretation of any insured holds true in this case as well. Although it does, it's different parties and the actual policy and exclusions may not apply. The court there did analyze any in the context of whether or not that language in and of itself. You know, there's some policies that have the insured, some policies that have any insured.  And, in fact, the court in Aurelius looked at Wasick in determining whether or not that particular insured was excluded or did not have coverage because of the policy language. And in that case, the court decided that the state farm policy, in fact, made it very clear to the policyholders that if, in fact, there is improper behavior on the part of one insured, that that other insured would not have coverage. And stated that if, and it goes back to the Wasick case, that if, in fact, all state did not want to cover all insureds in the case of the improper behavior of an insured, then it would have said so. And it didn't say so in the Wasick policy and it doesn't say so here. And so in that context, Your Honor, it is our position that Alejandra Contreras in Jasmine's daycare would not have known that she and it would be excluded from coverage for the improper behavior of another insured. In addition, counsel brings up the matter of the joint obligations clause. Right. And that was also rejected by this court because the joint obligations clause is a general declaration clause. And in that particular clause, it's understood that what the particular obligations of the insureds would be in the case of an event, et cetera, and not to apply with this specific exclusion. Well, why doesn't this clause support all states' contention that Aiden's intentional acts found the other insureds here? Well, that goes back to the Westfield v. Continental case, that there are – that the improper behavior or the intentional acts of one insured is not imputed to the other insureds in the case of coverage. And we think that was – that holding was correct. We think that the factual allegations contained within that complaint are significantly different than the complaint at law and the subject complaint in that her own conduct was the source of the excluded coverage and not – the court refused to impute Velda's, the abuser's, behavior onto hers. And that's the difference. As such, we believe that in this case, Alejandra Contreras, who is an innocent insured, is entitled to coverage in this case, not only because I think the court should look at her own individual conduct as set forth in the pleadings. And if you look at the pleadings, you'd see that the conduct as alleged thereof states that she was negligent, and her own actions, if analyzed in this particular case, like analyzed in the Westfield case, it would be found that her individual acts were analyzed as to whether or not they were intentional, they were not. And therefore, the conduct that's alleged within the complaint fall within or potentially within coverage. And therefore, it is our position that all State must defend and or indemnify in this case. But are we in a position to grant that particular relief with respect to indemnify at this stage? Our position is that the summary judgment be reversed in this case, and that the case be remanded back for further proceedings. That were the alternative relief, you ask? Yes, Your Honor. That is our position. Thank you so much. Thank you.  Good morning, Your Honor. Good morning. I'm here on behalf of the HACCP, all States Indemnity Company. How can you distinguish the continental casualty? I'm sorry? How do you distinguish the continental casualty? Westfield versus Canada. Yes, Your Honor. The way we distinguish that case, Your Honor, is just the wording of the exclusion itself. The exclusion in Westfield employs the term, the phrase, the insured, whereas all States exclusion employs the term any insured. And what difference does that make? When we're looking at all State versus Smiley, that's the case that really explained the differences between those two phrases. In all State versus Smiley, the court held that any insured broadens the exclusion to exclude coverage for all insureds as a result of the conduct of any insured. Yes, but if the conduct is intentional versus negligent, so are you saying if the conduct is intentional, criminal, and then on one of the other insured, the conduct was negligent, so then everybody's out of the box under all State? Yes, Your Honor. It doesn't matter the cause of action or the theory of liability asserted against any other insured. The reality of the matter is that the bodily injuries are what's not covered under the policy as a result of the exclusion. And the exclusion by employing the term any broadens it to negate coverage for all insureds, irrespective of what the cause of action that's being asserted against them because the bodily injury is what's not covered. How about the ISBA mutual insurance versus the Tuzolino case that went up for a Supreme Court? I'm sorry, Your Honor, which case was that one? The ISBA mutual versus the law office of Tuzolino. Is that the continental casualty one versus the? No, that's where another insured's wrongdoing triggered the policy inclusion. That's where the one lawyer. The misappropriation of funds, Your Honor, correct? Yes. Okay, got it. That case, Your Honor, first of all, came out four and a half years before the Illinois Supreme Court made its ruling in Northbrook. So in my opinion, the ruling in that case was incorrect. That case, the misappropriation claims against the attorney who stole the claimant's funds fell open to dishonesty exclusion, but the court held that the negligence claim against the law firm did not. The firm's negligent supervision of the trust account there fostered the misappropriation. Those are dependent upon each other. If you take away the misappropriation in that case, there's no negligence claim against the law firm, so they're dependent. In order for there to trigger coverage under that scenario, you have to have two wholly independent claims. Here, Your Honor, we do not have wholly independent claims. The claims against Alejandro Contreras and Jazmine's daycare are wholly dependent on, related to, and arise out of the sexual molestation by Aidy Contreras onto the minors. So therefore, the claims are not independent, and therefore, you know, they're just not. They're all excluded by the injunctive excluded period. So that's how we distinguish that case, Your Honor. Well, but aren't these causation cases, don't they involve coverage relating to injuries that arise out of specified conduct? And all states expected injury exclusion here doesn't contain that same language, arising out of. So why is this line of cases at all relevant to our analysis? Well, Your Honor, those cases employ the term arising out of. Here, we employ the term intended by or reasonably expected to result from. Reasonably from. Correct. That's different language. It is different language. The difference, though, is, Your Honor, is that all states exclusion applies whether anybody's conduct, any insurance conduct is intentional or criminal and causes the bodily injuries. And therefore, by then employing the term any, it excludes coverage as to all of the insurers. This really resorts down to the term any, the phrase any insurer or the insurer. Whether the policy or the exclusion employs the term arising out of or it doesn't, that doesn't matter. It doesn't make a difference. It's a distinction without a difference because at the end of the day, it's the bodily injuries that we're looking at. If they arose out of an insurer's intentional or criminal conduct, then there's no coverage for those bodily injuries, period. Well, let's go back to this question of the joint obligations language, any versus the. You know, in WASOC or WASIC, we said that the joint obligations clause in all states policy wasn't really part of the exclusionary clauses and instead was found among the general policy provisions like here. And therefore, I mean, can it not be construed as really referring just to the general obligations to pay the premiums, take certain actions, rather than to exclude coverage for all insurers when coverage is excluded for one? So why shouldn't we interpret it that way? Well, the exclusionary provision and the joint obligation provision, if you're correct, are separate parts of the policy. We don't need to use the joint obligations clause here to exclude coverage. What we want to do is use contract interpretation and interpret the exclusion itself. And the exclusion itself, when we look at it, is what is going to exclude the coverage. Now, so you're saying we actually then should use the Westfield approach where we look at the contract and we look at the complaint and then we use the eight-corner rule, we analyze both of them? We don't use the inferred intent approach? Yeah, we're definitely not trying to impute adding Contreras' intent to Alejandro Contreras or Jasmine Staker. That's not what we're looking to do. The inferred intent rule applies to adding Contreras, as you made clear. Okay. That's clear. So what we're saying is, you know, his intent is clear. He qualifies as uninsured person under the policy. All right. And, therefore, the policy now says any, and that broadens it to include any insurer that has no coverage for those bodily injuries. So we're not trying to impute any intent from Anna Contreras on to Jasmine Staker or Alejandro Contreras. When we look at policy exclusions, doesn't the case law tell us that we're to construe narrowly in favor of coverage? Yes, it does, Your Honor. And here, you know, we're also supposed to give it its plain and ordinary meaning. So when we're looking at this, we are construing it narrowly and we're giving it its plain and ordinary meaning. And as this Court, you know, clarified in Smiley, any means all. And that's what we're doing. We're construing it narrowly. We're giving it the interpretation it deserves, the plain and ordinary, and coverage is excluded under those principles. Now, if all states exclusion employed the phrase, the insured, we would have a different result here because then we would have to look at the expectation or intentions of Alejandro Contreras and or Jasmine Staker. You know, here, we don't need to do that. We're looking at the intention of Alejandro Contreras, his expectation of injury on the minors, and that excludes the bodily injuries and that applies to all the insured. But coverage is not being sought for him. So does that make a difference? No, Your Honor, it doesn't make a difference. The complaint clearly alleges that Alejandro Contreras, an insured person, which is not disputed, caused the injuries to the minors. And so, therefore, it does not matter that he is not a defendant in the case. And you don't feel that the innocent-insured doctrine trumps the language in this policy of any? And the broaden or your position of the fact that that language broadened the exclusion? I mean, how are these parties not innocent-insured? Innocent-insured. Well, a few things, Your Honor. First, if they were truly innocent-insured, Your Honor, we wouldn't be sitting here today. There wouldn't be a lawsuit asserted against them. The fact that there is a lawsuit just establishes that there is some liability. So are they truly innocent? No. Secondly, I believe the analysis of the innocent-co-insured doctrine, that is a first-party theory. It applies to first-party cases where we can actually truly have what's called an innocent-co-insured. One insured sets the house on fire to make a first-party claim. The other insured has no idea. And they exclude coverage but only ask to the culpable insured, not to the innocent-insured. But there truly could be an innocent-insured. Here in third-party liability claims, this doctrine really has no applicability because we're never going to have a truly innocent-co-insured. That's not what Westfield tells us. And aren't we bound to follow Westfield? I mean, that's a second-district case. Yeah, well, Westfield doesn't – it doesn't – it didn't need to – I don't believe that we needed to get to the innocent-co-insured in Westfield, number one. But number two, Westfield, again, employs the phrase the insured. So they just had to look at it from the context of whether the wife expected or intended injury. There was no need to go to the innocent-co-insured doctrine in Westfield, in my opinion, Your Honors, because of the fact that it employed the insured. So they just had to – the court had to look at it from the lens of did the wife intend or expect injury. Whether she did or didn't is based on the allegations. And there they found that the allegations were sufficient to establish that she did expect or intend injury because she facilitated, to some degree, the sexual abuse. So the innocent-co-insured doctrine, in my opinion, had no applicability in that case. And it doesn't change the result of our case here. Again, the innocent-co-insured doctrine is really, to us, a first-party – it's a first-party concept because there and only there can you really have truly an innocent-co-insured. So we ask – we respectfully ask this Honorable Court to affirm the decision of the trial court to follow the ruling in Smiley to broaden the exclusion to include – to exclude liability insurance coverage to Jasmine's daycare as well as to Alejandro Contreras as a result of the fact that injury was expected or anticipated by Aiden Contreras, another insured under the policy. Thank you very much, Counsel. Thank you very much, Your Honors. Counsel, what difference does it make to have the word the as opposed to any or an insured? It's about contract interpretation. And in those cases, the insured does particularly pertain to the insured. And that is why this word any has been subject to some case law because of the fact that it is – is it ambiguous? Does it apply to all insureds? Now, Counsel would state that if, in fact, one insured has improper behavior, then automatically voids coverage for all. Our position is that consistent with the Westfield case, first you look to the individual insured's conduct and whether or not that conduct in and of itself is excluded under an exclusionary clause. And that's what they did in Westfield. And then they determined what, if anything, in the policy would then exclude coverage for that individual. And that's where the term any comes in. In this case, we don't have any such conduct. So now we move over to whether or not the policy in and of itself would – the language of the policy would exclude coverage in this case. It is our position that it's not because although all state does use the word any, that word any was found by the Wasik case that it doesn't clearly state that the policy will be void or coverage will be excluded as to all insureds in the event of some improper behavior by any insured. So that is our position, that in this particular policy, it doesn't clearly state that the policy would be void. And neither – and Alejandro Contreras and Jasmine Zancari did not expect that it would either. And if, in fact, all state did want to void coverage in the instance of one individual's improper behavior for the other, then they would have put that language and they would have clearly stated it. And that is what the Court articulated in the Aurelius v. State Farm case. It stated that the insured should not be denied coverage unless the language of the insurance policy clearly states that the coverage will be excluded as to all insureds in the event of some improper behavior by any insured. And, Justice Shostak, that goes to your comment that exclusions are to be construed very narrowly. And in this case, if you are to construe it narrowly, then if they wanted to put that in there, like the State Farm policy did in the Aurelius case, they would have done so and they did not. And that's why the any concept doesn't work so far in excluding coverage for Alejandro Contreras and Jasmine Zancari because they didn't clearly state it. Thank you, Your Honor. Thank you very much, Counsel, for your arguments this morning. The Court will take the matter under advisement and render a decision in due course. We stand in recess until 1 o'clock.